599 P.2d 860

**NORTHERN ARIZONA UNIVERSITY, Petitioner Employer,**

**and**

**State Compensation Fund, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Vera I. Wilson, Respondent Employee.**

**No. 1 CA–IC 2039.**

Court of Appeals, of Arizona, Division 1, Department C.

June 26, 1979.

Rehearing Denied Aug. 9, 1979.

Review Denied Sept. 18, 1979.

statute, unless expressly continued in force by it, shall be deemed repealed and abrogated."

Robert K. Park, Chief Counsel, State
Compensation Fund by Don F. Schaar,

Phoenix, for petitioner employer and petitioner carrier.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Rabinovitz, Dix & Sands, P. C. by Fred R. Sands and Charles G. Rehling II, Tucson, for respondent employee.

## OPINION

HAIRE, Judge.

On this review of an award entered by the Industrial Commission's hearing officer in a workmen's compensation proceeding, the initial question raised by the petitioning carrier and employer is whether the hearing officer erred in excluding certain medical evidence.

In 1975 an award was entered reopening the claimant's prior industrial claim, based upon a finding by the hearing officer that the claimant had sustained a new, additional or previously undiscovered condition or disability causally related to her industrial injury of August 8, 1973. Thereafter, on October 25, 1977, the carrier issued its notice of claim status terminating temporary benefits on the reopening effective September 13, 1977, and further indicating that claimant had no residual permanent disability. The claimant contended that she had a permanent disability, and therefore filed a timely request for hearing. Pursuant to claimant's request, hearings were held before the Commission's hearing officer on March 6, and April 18, 1978. On April 21, 1978, the hearing officer entered his decision which found that the carrier's October 25, 1977 notice of claim status was supported by the evidence at the time it was issued, but that notwithstanding that fact claimant was entitled to additional benefits for conditions thereafter occurring based upon the evidence presented at the hearings.

The evidentiary question raised by the carrier concerns the exclusion by the hearing officer of certain psychiatric testimony. Prior to the hearings, claimant had submitted into evidence a report of Dr. Eugene Almer dated February 9, 1978. After setting forth a history of claimant's complaint and treatment, Dr. Almer's report stated:

"Mental status examination reveals she is anxious, discouraged, depressed, has difficulties with concentration and attention span and insightfully states she is caught in a trap and puts it this way, 'I feel like I am a bee in a hive and I will never get out'."

Dr. Almer's last psychiatric evaluation of claimant had occurred on January 12, 1978, a date approximately three months after the issuance of the carrier's October 25, 1977 notice of claim status, and approximately four months after the claimant had been last evaluated by the carrier's witness, Dr. Howard S. Gray. Dr. Gray had not examined claimant between September 13, 1977 and March 6, 1978, the date of the hearing. His psychiatric report dated September 20, 1977, which furnished the basis for the carrier's notice of claim status, concluded:

"1. Her condition is now stationary in the sense that she does not need further active medical (psychiatric) treatment to improve her industrial condition.

"2. Her case can now be closed without residual permanent psychiatric disability or impairment of function attributable to the industrial injury of August 8, 1973."

In preparation for the hearings, the claimant requested that Dr. Almer be subpoenaed and the carrier requested that Dr. Gray be subpoenaed. Although the burden of proof at the hearing was upon the claimant to establish her entitlement to benefits, see *Lawler v. Industrial Commission*, 24 Ariz.App. 282, 537 P.2d 1340 (1975), the hearing officer in scheduling the order of testimony determined that the carrier's witness, Dr. Gray, would testify prior to the claimant's witness, Dr. Almer, and issued subpoenas accordingly.

Dr. Gray proceeded to testify in support of the carrier's notice of claim status in accordance with his above-mentioned report of September 20, 1977. In essence his testimony was that as of September 13, 1977,

claimant's condition was stationary without need for further psychiatric treatment and without any residual permanent psychiatric disability. Although the claimant's psychiatric witness, Dr. Almer, had not testified prior to that point, his February 9, 1978 report was already in evidence, and, as quoted above, referred to anxiety, depression and difficulties with concentration that claimant was allegedly having at the time of Dr. Almer's examination of January 12, 1978. After establishing that Dr. Gray was familiar with Dr. Almer's entire report, carrier's counsel questioned Dr. Gray as follows:

"[A]ssuming, Doctor, that Vera Wilson on January 12, 1978 demonstrated to Dr. Eugene Almer anxiety, a state of being discouraged, of being depressed, and having difficulties with concentration and attention span, and continued complaints of low back pain and disability, do you have an opinion as to whether or not, based upon your familiarity with this case, these problems and complaints could reasonably be related to her industrial injury of August 8, 1973?

"[Claimant's counsel]: Excuse me, I'm going to object. I don't believe there would be any foundation for this doctor to comment on the findings of another doctor, assuming that this doctor did not find the same findings.

"THE HEARING OFFICER: Sustained.

"Q. [Carrier's counsel]: Doctor, in view of your lack of finding any psychiatric disability at the time of your examination of September of 1977, if thereafter there appeared in Vera Wilson's case evidence of anxiety and depression, would you relate those conditions to her industrial injury of August of 1973?

"[Claimant's counsel]: Objection, speculative, no foundation.

"THE HEARING OFFICER: Sustained.

\*   \*   \*   \*   \*   \*

"[Carrier's counsel]: Doctor, I would like you to assume that Dr. Eugene Almer on January 12th, 1978 found in the case of Vera Wilson, her to be anxious, discouraged, depressed, and having difficulty with concentration and attention span. I would like you to assume as a fact that those conditions existed at that point in time. Assuming those facts, Doctor, do you have an opinion as to whether or not those conditions or problems have a causal relationship to her industrial injury of August 8, 1973?

"[Claimant's counsel]: Same objection.

"THE HEARING OFFICER: Sustained.

\*   \*   \*   \*   \*   \*

"Q. [Carrier's counsel]: Doctor, based upon your familiarity, once again, with the case, would you anticipate subsequent to your examination in September of 1977 that there would arise thereafter, within a four-month period, depression or anxiety or the state of being discouraged, by virtue of the industrial injury of August of 1973?

"[Claimant's counsel]: I'm going to object. I believe it's the same question that's been asked four or five different times calling for speculation.

"THE HEARING OFFICER: Sustained."

Thereafter, the claimant's psychiatric witness, Dr. Almer, was permitted to testify regarding claimant's psychiatric condition subsequent to September 13, 1977, and its causal relationship to the industrial injury. Based upon Dr. Almer's testimony, the hearing officer found that "the applicant [claimant] continues to have a psychiatric condition related to the subject industrial episode and that said condition is not yet medically stationary."

■ In our opinion the hearing officer's rulings on the questions propounded to Dr. Gray constituted reversible error. While it is true that at workmen's compensation hearings the hearing officer has wide discretion over the admissibility of evidence, and need not adhere to formal rules of

evidence,[1] his discretion is not absolute. Ultimately the exercise of his discretion must be measured against a standard of achievement of "substantial justice". In practical terms this will generally require a liberalization of the rules of evidence, not the adoption of more stringent rules of admissibility. As stated by this Court in *Gordon v. Industrial Commission*, 23 Ariz.App. 457, 533 P.2d 1194 (1975):

> "It was in keeping with such motives that the legislature enacted A.R.S. § 23–941(F), allowing for liberalization of the common law and statutory rules of evidence so that the greatest amount of competent evidence would be available to the Commission for its deliberation upon an award. Because of this aim, and the method the legislature has created of achieving it, reversible error is more likely to occur by the exclusion of admissible evidence than the inclusion of incompetent evidence. *See* 3 A. Larson, Law of Workmen's Compensation § 79.10 (1972). The Commission cannot be presumed to have reached the right result if it erroneously excluded on technical grounds some important piece of evidence which might have swayed the result. *See* Larson, *supra*, § 79.10."

23 Ariz.App. at 460–1, 533 P.2d at 1197–8. *See also Cash v. Industrial Commission*, 27 Ariz.App. 526, 556 P.2d 827 (1976).

▮ Here the objections to Dr. Gray's testimony were that the testimony offered would constitute a comment upon the findings of another doctor, would be speculative, and was without foundation. None of these objections had any merit, especially when consideration is given to the procedural anomaly created by the hearing officer[2] which required that the carrier's expert psychiatric witness testify prior to that of the party having the burden of proof.

The first objection was that the question asked of Dr. Gray by the carrier constituted an attempt to get the witness "to comment on the findings of another doctor". Although the legal foundation for this objection is not specified, it appears to be based upon the Arizona Supreme Court's decision in *Rutledge v. Industrial Commission*, 108 Ariz. 61, 492 P.2d 1168 (1972), wherein the Court stated:

> "It is one thing, in an Industrial Commission matter, for an expert to examine medical records, reports, and (where necessary for a determination of the matter) the petitioner, and then testify on matters peculiarly within his expertise. It is another thing to merely review the Commission's medically incomplete file *and comment on the testimony of the examining physician.* Such testimony is not substantial." 108 Ariz. at 64, 492 P.2d at 1171 (emphasis added).

This principle is inapplicable to the circumstances presented by Dr. Gray in the pending proceedings. We first note that Dr. Gray was not asked whether the psychiatric conclusions of Dr. Almer were erroneous. Rather, the carrier asked Dr. Gray to assume as a fact that the conditions found by Dr. Almer on January 12, 1978 did exist and whether, based upon Dr. Gray's familiarity with the case, he could relate those conditions to the industrial injury of August 8, 1973. In view of Dr. Gray's prior examinations and personal evaluations of claimant's psychiatric condition, his testimony in that regard would not constitute the type of file review and comment on the medical testimony condemned in *Rutledge.*

---

1. A.R.S. § 23–941 F provides:

   "F. Except as otherwise provided in this section and rules or procedure established by the commission, the hearing officer is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure and may conduct the hearing in any manner that will achieve substantial justice."

2. This Court recognizes that the practical difficulties inherent in the scheduling of medical witnesses, which include the necessity of giving consideration to the doctor's schedule as well as the Commission's lack of direct contempt power, will at times dictate an inverse order in the presentation of witnesses' testimony. This practice should not be followed when not absolutely necessary, however, and when necessary the hearing officer should give special consideration to the resulting evidentiary problems.

The next objection was that Dr. Gray's answers would be speculative or call for speculation. Just where this speculation would come into play is again unclear. Dr. Gray was not asked to speculate upon the nature of claimant's condition on January 12, 1978. He was asked to assume as a fact that her condition was as stated in Dr. Almer's report which was already in evidence. Suffice it to say that if Dr. Gray's testimony based upon such facts would have been speculative, then the subsequent testimony of claimant's witness, Dr. Almer, based upon the same evidentiary facts would have been equally speculative.

The third objection was "no foundation". Our comments relating to the objection on the basis of speculation are equally applicable to the no foundation objection. An examination of the record reveals a completely adequate foundational basis for Dr. Gray's proffered testimony. Dr. Gray had evaluated claimant on two occasions prior to these proceedings. The record shows that he had reviewed the medical records regarding her industrial claim from its inception. He had testified that his psychiatric examination in 1976 had revealed that claimant had psychiatric problems. He further testified that his September 13, 1977 psychiatric examination failed to reveal the continued existence of any psychiatric illness. He was then asked to assume that certain emotional or psychiatric conditions as found by Dr. Almer in January 1978 did in fact exist and, based thereon, to give his opinion as to whether they would be reasonably related to her industrial injury of August 8, 1973. We find no merit in the foundational objection.

Without question the hearing officer's erroneous rejection of Dr. Gray's testimony was prejudicial to the carrier, since in its absence the only psychiatric testimony relating to claimant's condition after September 13, 1977, was that of claimant's witness, Dr. Almer. Because of this prejudicial error, the award entered by the hearing officer must be set aside and the matter remanded for further proceedings. We therefore need not discuss the arguments set forth in the carrier's third question presented for review,[3] even though in our opinion that question in itself presents a substantial basis for setting aside the award. Because of our ruling concerning the admissibility of psychiatric testimony, there appears to be little likelihood of a recurrence of the issues raised in the carrier's third question.

The award is set aside.

EUBANK, P. J., and FROEB, J., concur.

---

3. Carrier's third question is as follows:

"III
IS THE HEARING OFFICER'S AWARD OF TEMPORARY COMPENSATION AND MEDICAL BENEFITS AFTER NOVEMBER 22, 1977 BASED UPON A PSYCHIATRIC CONDITION WITHOUT SUPPORT IN THE RECORD?"