609 P.2d 98

**MODERN INDUSTRIES, INC.,**
**Petitioner Employer,**

**State Compensation Fund, Petitioner**
**Carrier,**

v.

**The INDUSTRIAL COMMISSION of**
**Arizona, Respondent,**

**George W. Smitley, Respondent**
**Employee.**

No. 1 CA–IC 2172.

Court of Appeals of Arizona,
Division 1,
Department C.

Feb. 7, 1980.

Rehearing Denied March 18, 1980.

Review Denied April 8, 1980.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by Gregory L. Folger, and Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for petitioners employer and carrier.

James L. Stevenson, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Machmer, Schlosser & Meitz by Ronald M. Meitz, Phoenix, for respondent employee.

## OPINION

JACOBSON, Judge.

This review of an award of the Industrial Commission raises two issues:

(1) The right of a claimant to raise the question of a loss of earning capacity attributable to a prior closed unscheduled industrial injury in a proceeding dealing with a subsequent apparent scheduled [1] industrial injury; and

(2) Whether a general physical impairment attributable to a prior unscheduled industrial injury which resulted in no loss of earning capacity can convert a subsequent scheduled industrial injury into the unscheduled class.

---

1. "Scheduled" injuries are those enumerated in A.R.S. § 23–1044(B) and are compensated at a specified rate without regard to actual loss of earning capacity. "Unscheduled" injuries are compensated under A.R.S. § 23–1044(C) on the basis of actual loss of earning capacity.

The facts giving rise to these issues are not in material dispute. On September 8, 1960 the respondent employee, George W. Smitley, sustained an industrial back injury which resulted in an award entered on December 29, 1961 finding that he had sustained a ten percent general physical impairment and awarded unscheduled benefits pursuant to A.R.S. § 23–1044(C) and (D).

Petitioner carrier, the State Compensation Fund (Fund), paid unscheduled benefits to Smitley under this award until March 11, 1975. On that date, pursuant to a petition for rearranging compensation filed by the Fund, an award was entered finding that Smitley no longer suffered a loss of earning capacity as a result of the 1960 industrial injury.[2] This award was allowed to become final.

On January 25, 1977, Smitley, while employed by petitioner employer, Modern Industries, Inc., at a salary in excess of $1,000 per month, sustained another industrial injury. His average monthly wage was established at the then statutory maximum of $1,000 per month. The industrial carrier at this time was also the Fund. As a result of this injury, Smitley sustained a 35 percent functional impairment of the right (minor) arm. Subsequently the Fund issued a notice of claim status awarding Smitley a scheduled award pursuant to A.R.S. § 23–1044(B) in the amount of $500 a month for a period of 17 and one-half months. This notice was timely protested and hearings were scheduled for November 16, 1978. However, at a pre-hearing conference on November 1, 1978, the parties agreed to submit the matter to the hearing officer based upon the record as developed by both parties. This record included medical reports and in the words of the hearing officer in his award:

"[I]t is recognized that the applicant has submitted documentation to establish an alleged loss of earning capacity since the prior res judicata Order of the Commission issued March 11, 1975 and prior to and/or at the time of the second (subject) industrial injury sustained herein on January 25, 1977; that similarly, the carrier has submitted contrary documentation purporting to establish the applicant had still sustained no loss of earning capacity between the time of the aforesaid Commission Order and the occurrence of the subject industrial injury; that it was further stated by counsel for the interested parties at prehearing conference, and accepted herein, that further oral testimony relative to the applicant's loss of earning capacity and/or lack thereof during the aforesaid period would have been submitted at time of convening formal hearing . . . ."

The hearing officer in his award in this matter deemed evidence concerning Smitley's loss of earning capacity attributable to the 1960 unscheduled injury immaterial in view of the res judicata effect of the March 11, 1975 award finding no loss of earning capacity. The hearing officer also found that the March 11, 1975 award was binding at the time of the second injury.

However, the hearing officer further found, regardless of the lack of the loss of earning capacity attributable to the 1960 injury, that the ten percent permanent physical impairment brought about by that injury operated to convert the 1977 scheduled injury into the unscheduled class.

Both the Fund and Smitley filed requests for review—the Fund contending that the hearing officer erred in holding, as a matter of law, that the second industrial injury was unscheduled; Smitley contending the hearing officer erred in failing to consider his evidence as to a loss of earning capacity attributable to the 1960 industrial injury in order to lay the foundation to convert the subsequent scheduled injury into the unscheduled class.

Both parties have preserved their respective positions for review by this court.

We turn first to Smitley's contention that even though a prior unaltered award find-

2. The pertinent portion of that award found:
   "That applicant is not presently suffering a loss of earning capacity in relation to his injury of September 8, 1960 . . . ."

ing no loss of earning capacity attributable to the 1960 injury exists, that award speaks only as to the time it was entered and does not preclude, in a subsequent unrelated proceeding, the introduction of evidence showing that at the time of the second injury a loss of earning capacity actually existed. Smitley cites no authority for this proposition, but merely points to the wording of the award itself which states "that applicant *is not presently* suffering a loss of earning capacity." [Emphasis added.] From this wording, Smitley argues that the award speaks only as of the time it was entered and has no future effect. This argument overlooks both the settled law in the area as to the res judicata effect of awards of the Industrial Commission and the statutory provisions ameliorating that res judicata effect.

■ It has long been established that awards of the Industrial Commission, which are unprotested, are allowed to become final and remain unaltered, are entitled to continuing res judicata effect. *Talley v. Industrial Commission*, 105 Ariz. 162, 166, 461 P.2d 83, 87 (1969) ("[I]f a rehearing is not requested and a timely review sought in the courts, the award, order, or finding is forever conclusive . . ."); *Judd v. Industrial Commission*, 23 Ariz.App. 254, 532 P.2d 196 (1975).

■ The "forever conclusiveness" of an Industrial Commission award is subject to specific statutory provisions which soften the harshness of that rule. Thus, in the case of the loss of earning capacity, A.R.S. § 23–1044(F) makes it clear that a determination of earning capacity is subject to change in the following events:

"1.  Upon a showing of a change in the physical condition of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity, or

"2.  Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition, subsequent to the findings and award, or

"3.  Upon a showing that his earning capacity has increased subsequent to such findings and award."

Moreover, it is equally clear that the triggering mechanism for such a showing under A.R.S. § 23–1044(F) is that provided by A.R.S. § 23–1061(H), which provides: "An employee may reopen his claim to secure an increase or rearrangement of compensation . . . by filing with the commission a petition requesting the reopening of his claim. . . ." Smitley did not avail himself of this opportunity prior to the hearing on the subsequent injury. Based upon these statutory provisions the hearing officer could properly have concluded that he lacked authority to adjudicate the propriety of an award issued in a separate and distinct claim in the setting of an unrelated claim hearing, for the jurisdiction of the Commission had not been properly invoked to consider that issue.

Moreover, valid policy reasons exist for such an orderly processing of claims. First, the rights of parties to the first award who may not be before the Commission in the second injury proceedings could be affected. In this mobile society not only do workmen change employers, employers change insurance carriers. No one would seriously argue that if the insurance carrier for the second injury was not the same as for the first injury, that an award entered in the second injury case would be binding on the first injury carrier or affect rights which might flow to both carriers under A.R.S. § 23–1044(E). Secondly, the binding effect of prior awards enures to the benefit of both the workman and the carrier. Here, if the workman was allowed to litigate the change of loss of earning capacity, could not the carrier litigate the issue of the change in physical condition, a showing allowed under A.R.S. § 23–1044(F)(1)? Moreover, if a prior award established a loss of earning capacity, the carrier should likewise be precluded from relitigating this issue at the time of the second injury.

In short, we hold the hearing officer properly refused to consider evidence of loss of earning capacity attributable to the 1960

injury, in absence of the jurisdiction of the Commission being properly invoked to consider the propriety of its previous awards by a filing of a petition to reopen in that first injury claim.

We realize that the timing of the filing of the petition to reopen the first injury claim, which we hold here to be a prerequisite to any inquiry concerning the propriety of that award, is a factor to be considered by all parties. As we read *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978), in order to convert a subsequent scheduled injury into the unscheduled class, a loss of earning capacity attributable to a prior injury must exist *at the time of the subsequent injury*. However, how the subsequent injury will be classified (as either scheduled or unscheduled) may not occur until that injury becomes stationary, sometime after its occurrence. This becomes *important since* A.R.S. § 23-1061(H) (dealing with petitions to reopen) provides benefits only prospectively from the date of filing the petition to reopen. However, we find nothing in that statute which would prohibit the fact finder from considering a loss of earning capacity question directed to a point in time prior to the filing of the petition to reopen, although a change in compensation would be effective only from the date of filing.

We now turn to the Fund's contention that a physical impairment arising from an unscheduled injury which resulted in no loss of earning capacity cannot convert an otherwise scheduled injury into the unscheduled class. In this regard, the Fund is correct.

In the recent opinion of *Elmer Shelton Concrete v. Industrial Commission*, 123 Ariz. 200, 598 P.2d 1019 (App.1979), this court was faced with a situation identical to the one Mr. Smitley presents here. In *Elmer Shelton Concrete*, the applicant had previously sustained an industrial injury to his back which resulted in a ten percent general physical impairment. This resulted in an unscheduled award with no loss of earning capacity. He subsequently sustained a scheduled 35 percent permanent

partial disability to his left leg. In rejecting the contention that the presence of an unscheduled physical impairment alone would convert the scheduled injury to the unscheduled class, the court relied upon *Gallardo v. Industrial Commission*, 16 Ariz. App. 491, 494 P.2d 391 (1972) wherein we stated:

"Nowhere does A.R.S. § 23-1044, subsec. C [dealing with unscheduled injuries] contain comparable language to A.R.S. § 23-1044, subsec. B [dealing with scheduled injuries], that the unscheduled injury 'shall be deemed permanent.' On the contrary, subsection C is explicit that unscheduled injuries may be transitory in nature depending upon the claimant's continued loss of earning capacity. Therefore, if the prior unscheduled injury does not result in a loss of earning capacity, and no presumption arises from the statute, then no 'disability' is present to make operative the provisions of A.R.S. § 23-1044, subsec. E (combining of disabilities to result in an injury compensable upon loss of earning capacity.)" 16 Ariz. App. at 493, 494 P.2d at 393.

The court in *Elmer Shelton Concrete* went on to analyze the Supreme Court's decision in *Alsbrooks v. Industrial Commission, supra.* Following this analysis, the court stated:

"This holding [in *Alsbrooks*] clearly supports this court's determination in *Gallardo* that a prior unscheduled industrial injury which results in permanent disability will not convert a subsequent scheduled injury into an unscheduled injury unless the prior unscheduled injury resulted in a . . . loss of earning capacity." 123 Ariz. at 203, 598 P.2d at 1022.

Based upon the foregoing, the award of the Industrial Commission is set aside.

HAIRE, P. J., and CONTRERAS, J., concur.