642 P.2d 903

**ASBESTOS ENGINEERING & SUPPLY CO., Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Lloyd D. Cogdill, Respondent Employee.**

**No. 1 CA-IC 2552.**

Court of Appeals of Arizona, Division 1, Department C.

March 11, 1982.

---

Robert K. Park, Chief Counsel, State Compensation Fund by Robert F. Retzer, Phoenix, for petitioners Employer & Carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Christopher J. Philips, P. C. by Christopher J. Philips, Phoenix, Attys. for respondent Employee.

## OPINION

CONTRERAS, Judge.

The dispositive issue presented in this special action—Industrial Commission is whether the administrative law judge erred in finding that the respondent employee (hereafter respondent) met his burden of proving a prior non-industrial injury so as to entitle him to an unscheduled award under A.R.S. § 23–1044(E).[1] We find that the respondent failed to present sufficient evidence and therefore set aside the award.

## BACKGROUND

The material facts are as follows. Respondent employee Lloyd D. Cogdill sustained an injury to his left knee on July 17, 1978, while working as a roofer for petitioner employer Asbestos Engineering & Supply Company. The facts regarding the knee

---

1. § 23–1044 Compensation for partial disability; computation

    E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

injury are not disputed for purposes of this review. The respondent's claim for benefits was accepted by petitioner carrier. Later, the carrier issued a notice of claim status finding respondent's condition to be stationary and finding a 15% permanent scheduled disability of the left leg (knee). Respondent protested the notice of claim status and the matter was set for hearing.

At the hearing, respondent argued that he was entitled to an unscheduled award. He testified that he had a pre-existing eye condition which bothered him when focusing up close.

The only other evidence regarding the eye problem was a letter from respondent's former insurance supervisor which stated that respondent did have vision problems while working as an insurance salesman, and that respondent had to leave his position as an insurance salesman because of problems with his eyes. There was no medical testimony regarding the eye condition.

The administrative law judge's findings regarding the eye condition are as follows:

6. ... The applicant also testified that he has had a problem with his eyes since he was sixteen years old, which has to do with the focusing of his eyes and has forced him to change jobs and leave the lucrative field of insurance salesman in which he had worked himself up to a district manager; that he had also left a job working for Donnelly's Garment Company as a cutter which required fine cutting and his eyes also bothered him doing that work; that due to this eye problem he had entered the occupation of roofer and had performed this occupation for approximately eight years.

7. That the uncontradicted testimony indicates that the applicant has sustained an impairment of his earning capacity as a result of his eye condition....

8. The law is clear that an injury is not necessary in order to sustain an impairment which will alter a scheduled disability into an unscheduled disability, pursuant to the law: *Lewis v. Industrial Commission*, [126] Ariz. [266] (Ct.App.)

614 P.2d 347 (1980). The applicant has sustained his burden of proof to show that he had a preexisting impairment of the eyes which had resulted in adversely affecting his earning capacity at the time of his subsequent injury: *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978); *Modern Industries Inc. v. Industrial Commission*, 125 Ariz. 283 (Ct. App.) 609 P.2d 98 (1980); *Leon v. Industrial Commission*, 10 Ariz.App. 470, 459 P.2d 749 (1969); *Ronquillo v. Industrial Commission*, 5 Ariz.App. 233, 425 P.2d 135 (1967).

## LEGAL EFFECT OF A PRE-EXISTING CONDITION

Both parties recognize that a pre-existing condition may operate to convert a subsequent scheduled disability into an unscheduled disability, upon a showing that the pre-existing condition resulted in a loss of earning capacity. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978). The dispute here is an evidentiary one—which party had the burden of going forward and what evidence was necessary to satisfy the burden of persuasion. Generally, of course, the burden of proof at the hearing is on the workman to establish his entitlement to benefits. *Northern Arizona University v. Industrial Commission*, 123 Ariz. 407, 599 P.2d 860 (App.1979).

### 1. A scheduled impairment.

Where a pre-existing condition is alleged, the workman may be entitled to a legal presumption which meets his burden of proof on the issue of lost earning capacity. If the pre-existing condition was a prior industrially related scheduled condition, then there is a conclusive presumption that the prior condition resulted in a loss of earning capacity. If the pre-existing condition is a prior non-industrially related scheduled impairment, then there is a rebuttable presumption that the prior impairment had an effect on the earning capacity of the workman at the time of the second injury. *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971); *Borsh v.*

*Industrial Commission*, 127 Ariz. 303, 620 P.2d 218 (1980).

2. *A non-scheduled impairment.*

■■ These presumptions do not apply if the prior condition is a non-scheduled impairment. *Borsh, supra; Yanez v. Industrial Commission*, 21 Ariz.App. 367, 519 P.2d 220 (1974). But even if the injured employee cannot shift the burden of proof to the employer and carrier under the *Ronquillo* presumptions, he still would be entitled to an unscheduled award if he proved that the pre-existing condition in fact resulted in a loss of earning capacity at the time of the subsequent industrial injury.

## RESPONDENT'S EYE CONDITION

It is not entirely clear whether the administrative law judge found (1) that respondent had proven that the eye condition was a scheduled impairment, thereby relieving him of the burden of proof of loss of earning capacity, or (2) that respondent had proven that the eye condition was a non-scheduled impairment, but respondent had also proven a loss of earning capacity. The theory that respondent's eye condition constituted a scheduled impairment finds apparent support in A.R.S. § 23–1044(B), which lists scheduled impairments, including the following:

17. For the permanent and complete loss of sight in one eye without enucleation, 25 months.

21. For the ... partial loss of sight..., fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the ... complete loss of sight..., which the partial loss ... thereof bears to the ... total loss of sight....

■ However, for the reasons set forth below, we conclude that respondent failed to prove the pre-existing condition, regardless of whether or not it would have constituted a scheduled impairment. It was respondent's burden to prove the presence of a pre-existing impairment, and that the condition adversely affected his earning ca-

pacity at the time of the subsequent injury. *Lewis v. Industrial Commission*, 126 Ariz. 266, 614 P.2d 347 (App.1980). The Arizona Supreme Court adopted the following definition of the phrase "permanent impairment" in *Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976):

1. *Permanent Impairment.*—This is a purely medical condition. Permanent impairment is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved, which abnormality or loss the physician considers stable or nonprogressive at the time evaluation is made. It is always a basic consideration in the evaluation of permanent disability.

113 Ariz. at 305, 552 P.2d at 1199, fn. 1. The determination of impairment is a medical question, while evaluation of disability is a legal question. *Alsbrooks, supra.*

On review, the major point of disagreement between the parties is whether expert medical testimony was required concerning the eye condition in order to establish a pre-existing condition entitling respondent to an unscheduled award. Petitioners submit that such medical testimony is necessary to establish the alleged pre-existing impairment. Respondents, on the other hand, contend that the uncontroverted testimony of the respondent, supported by the letter from the insurance supervisor, was sufficient evidence to establish a pre-existing disability under A.R.S. § 23–1044(E).

■ We believe that petitioners' position is in accord with the established law concerning the requisite proof of injury. While many of the conditions enumerated in A.R.S. § 23–1044(B) may be adequately proven without expert medical testimony, others, including those here in question, cannot be so proven. If a condition is not one which is clearly apparent to a layman, such as a loss of limb or external lesions, the physical condition of a person can only be determined by expert medical testimony. *Lowry v. Industrial Commission*, 92 Ariz. 222, 375 P.2d 572 (1962). This court stated in *Eldorado Ins. Co. v. Industrial Commission*, 27 Ariz.App. 667, 558 P.2d 32 (1976):

The obvious reason for this rule is that lay persons are no better able to testify concerning the functioning of the human body than they are to treat its infirmities. While most lay persons have opinions and theories of their own as to how the human body functions, our courts have decided that, in order to recover compensation, a standard of expert evidence on the subject is required where the injury is not apparent to the layman.

27 Ariz.App. at 670, 558 P.2d at 35.

The rule requiring medical testimony is particularly appropriate in vision impairment cases. As stated in 3 Larson, Workmen's Compensation Law, § 79.54, at 15–284 to 15–285:

Eye cases easily fall in the category requiring expert medical evidence, . . . . Moreover, findings of percentage of loss of vision must be based on objective medical tests, not on subjective impressions of the claimant. This is particularly defensible, since, . . ., there are available scientific tests that can measure loss of vision with considerable accuracy, and so there is no need to rely on nonscientific estimates.

In the case at bar, there is no medical testimony regarding the eye condition. Thus, the respondent has neither established that the impairment ever existed nor that it existed at the time of the subsequent injury. There is no sufficient evidence as to whether the condition is stationary, whether it is permanent, or the extent of the impairment. Because respondent had the burden of proving an impairment resulting from the eye condition, respondent needed to bring forth medical evidence regarding the alleged impairment. Because he did not do so, there is insufficient evidence in the record such as to establish that the pre-existing condition was one. which could convert the subsequent, industrial injury into an unscheduled injury for purposes of the award. The administrative law judge's findings that respondent met his burden of proof are erroneous.

Because we set aside the award on the basis of the first issue presented by petitioners, we need not address the second issue presented by petitioners.

The award is set aside.

EUBANK and HAIRE, JJ., concur.