NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

LEMMIE LOCKRIDGE, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

A.M. KING INDUSTRIES, INC., *Respondent Employer,*

SPECIAL FUND/NO INSURANCE DIVISION, *Respondent Party in Interest.*

No. 1 CA-IC 13-0041

FILED 07-31-2014

---

Special Action - Industrial Commission
ICA Claim No. 20023-520080
Joseph L. Moore, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Law Office of Richard T. Weissman, PLLC, Mesa
By Richard T. Weissman
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Lester & Norton, P.C., Phoenix
By Steven C. Lester
*Counsel for Respondent Employer*

Special Fund Division/No Insurance Section, Phoenix
By Miral A. Sigurani
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**C A T T A N I**, Judge:

¶1          Petitioner Lemmie Lockridge seeks special action review of an administrative law judge ("ALJ")'s ruling denying Lockridge's request that his Industrial Commission of Arizona ("ICA") benefits be increased based on a change in his physical condition and/or his earning capacity subsequent to the original benefit award. For reasons that follow, we affirm the ALJ's ruling.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          Respondent employer A.M. King Industries, Inc. ("King Industries"), employed Lockridge as a welder and mechanic. On November 26, 2002, Lockridge was working on a platform when it collapsed, causing him to fall 25 to 30 feet. Lockridge sustained a lumbar-burst fracture and underwent surgery for decompression and stabilization of his spine. His condition eventually became medically stationary with a permanent partial impairment. The parties entered into a stipulation that Lockridge's industrial injury caused a loss of earning capacity entitling him to receive $775.72 in monthly permanent partial disability benefits. An ALJ approved the parties' stipulation.

¶3          Although the stipulation provided that Lockridge was capable of performing light duty work for up to thirty hours per week, he did not look for or return to work. Approximately six years later, however, Lockridge petitioned for rearrangement to increase the amount of his award based on a labor market report that concluded that Lockridge sustained a complete loss of earning capacity and was unemployable. The

ICA agreed and entered its findings and award increasing Lockridge's benefits. The ICA found that, based on a 100% reduction in Lockridge's monthly earning capacity, he was entitled to $1,386.63 per month in permanent partial disability benefits.

¶4 King Industries timely challenged the ICA's findings and award and requested a hearing. The ALJ conducted a hearing and considered testimony from Lockridge, his treating physician, an independent medical examiner, and two labor market experts. After weighing and assessing the evidence, the ALJ entered an award denying the increased benefit. Lockridge timely requested administrative review, which was summarily denied. Lockridge then filed this special action. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 10.[1]

## DISCUSSION

¶5 Lockridge first argues he was entitled to an increased benefit pursuant to the rearrangement provisions set forth in A.R.S. § 23-1044(F)(1) because he established a change in physical condition and a corresponding loss of earning capacity. In reviewing ICA findings and awards, we defer to the ALJ's factual findings, but we review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

¶6 Rearrangement and reopening are exceptions to res judicata and work together to allow a claimant to adjust both his medical treatment and disability benefits to reflect ongoing changes in his industrially-injured condition. *See Stainless Specialty v. Indus. Comm'n*, 144 Ariz. 12, 15–16, 18–19, 695 P.2d 261, 264–65, 267–68 (1985); *see also Modern Indus. v. Indus. Comm'n*, 125 Ariz. 283, 286, 609 P.2d 98, 101 (App. 1980). In the case of lost earning capacity, § 23-1044(F)(1) specifically allows modification of an otherwise-final award in the case of certain changed circumstances:

> F.     For the purposes of subsection C of this section, the commission, in accordance with the provisions of § 23-1047 when the physical condition of the injured employee becomes

---

[1]     Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

stationary, shall determine the amount which represents the reduced monthly earning capacity and upon such determination make an award of compensation which shall be subject to change in any of the following events:

1. Upon a showing of a change in the physical condition of the employee subsequent to such findings and award arising out of the injury resulting in the reduction or increase of the employee's earning capacity.

¶7 A change in condition is measured by "comparing the facts determined by the [prior] final findings and award with those existing at the time of the [] petition." *Gallegos v. Indus. Comm'n*, 144 Ariz. 1, 5–6, 695 P.2d 250, 254–55 (1985). Expert medical testimony is necessary to establish the requisite change in physical condition to support rearrangement. *See W. Bonded Prod. v. Indus. Comm'n*, 132 Ariz. 526, 527, 647 P.2d 657, 658 (App. 1982).

¶8 In this case, the comparison points are the October 20, 2004 award for unscheduled permanent partial disability benefits and the June 2, 2010 petition to rearrange. The 2004 award adopted the parties' stipulation, which found that Lockridge had an unscheduled permanent partial impairment and was "capable of working as a retail clerk/marketing representative, self-service gas station attendant, etc., working 30 hours a week and earning $5.15 per hour on a roll-back basis." Under the 2004 award, Lockridge was deemed to have a loss of earning capacity of $1,410.39 per month, and he received permanent partial disability benefits of $775.72 per month.

¶9 To establish the 2010 change in condition, Lockridge presented testimony from Robert McKissick, M.D., his treating family practitioner. Dr. McKissick began treating Lockridge in 2009 for industrially related chronic pain that required narcotic medication. When asked about Lockridge's medical condition in 2004, however, Dr. McKissick stated that he was unaware of Lockridge's medical problems, medications, or work restrictions as of October 20, 2004. Accordingly, he was unable to state whether there had been any change in Lockridge's physical condition subsequent to the 2004 award.

¶10 King Industries presented medical testimony from Irwin Shapiro, M.D., a board-certified orthopedic surgeon, who had performed independent medical examinations of Lockridge in August 2004 and August 2011. Dr. Shapiro testified that Lockridge's diagnostic studies

showed no change in his lumbar fusion, and that Lockridge's objective physical condition remained unchanged from 2004. Dr. Shaprio stated that Lockridge had increased subjective complaints of pain, but no objective or pathologic basis for these complaints. Dr. Shapiro further noted that this type of nonorganic finding is frequently psychosocial in nature, and he opined that Lockridge remained capable of light, sedentary employment for eight hours per day, forty hours per week. Dr. Shaprio stated that his opinion was based on both Lockridge's objective physical condition and his subjective complaints.

¶11        After noting that A.R.S. § 23-1044(F)(1) requires a change in physical condition as a prerequisite to rearrange, the ALJ correctly rejected Lockridge's argument that increased subjective complaints of pain are a sufficient change to warrant a benefit increase. By its terms, § 23-1044(F)(1) requires showing "a change in the physical condition of the employee." Similarly, increased subjective complaints of pain unaccompanied by objective physical changes are an insufficient basis to reopen a claim for additional medical treatment, which further underscores their insufficiency to establish a basis to modify an ICA award. *See* A.R.S. § 23-1061(H) ("A claim shall not be reopened because of increased subjective pain if the pain is not accompanied by a change in objective physical findings."). To the extent Drs. McKissick's and Shapiro's opinions conflicted, the ALJ adopted Dr. Shapiro's findings. *See Perry v. Indus. Comm'n*, 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975) (when expert medical testimony conflicts, it is the ALJ's duty to resolve those conflicts). The ALJ's conclusion is supported by the record, and we thus conclude that the ALJ did not err by finding that Lockridge failed to meet his burden of proof for a benefit modification under A.R.S. § 23-1044(F)(1).

¶12        Lockridge also argues that he presented a claim under A.R.S. § 23-1044(F)(2), which permits a modification of a lost earning capacity award "[u]pon a showing of a reduction in the earning capacity of the employee arising out of such injury where there is no change in the employee's physical condition, subsequent to the findings and award." *See also Gallegos*, 144 Ariz. at 2, 695 P.2d at 251 (noting that an award modification is available under § 23-1044(F)(2) when there is a reduction in earning capacity causally related to the industrial injury that results from "some external change in circumstances occurring after the commission issued its final award."). Although questioning whether Lockridge raised a claim under this subsection, the ALJ nevertheless addressed the issue.

¶13        Lockridge presented labor market testimony from Nathan Dean, who reported that Lockridge was unemployable and had a complete

loss of earning capacity.[2]   King Industries presented testimony from vocational consultant Erin Welsh, who testified that sedentary work with the opportunity to frequently change positions remained available to Lockridge in the applicable labor market.  The ALJ resolved the conflict between the experts, finding Welsh's testimony to be more persuasive and concluding that Lockridge's claim was not factually supported.

**¶14**        Considering the evidence in the light most favorable to sustaining the ALJ's ruling, we conclude that the ALJ did not err by rejecting Lockridge's claim of changed economic circumstances between 2004 and 2010.

## CONCLUSION

**¶15**        For the foregoing reasons, the award is affirmed.



**Ruth A. Willingham · Clerk of the Court**
F I L E D : gsh

---

[2]        Dean relied on Lockridge's receipt of Social Security Disability Benefits in his report.  This court has recognized that a social security determination may be admissible and relevant for certain purposes in an ICA proceeding, but "[t]he fact that the claimant, under a different law, is entitled to disability benefits from the Social Security, has no effect on the amount of industrial compensation claimant is entitled to draw."  *Womack v. Indus. Comm'n*, 3 Ariz. App. 74, 81, 412 P.2d 71, 78 (1966).