NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KURT STEINER, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

AFFINITY TECHNOLOGY, *Respondent Employer*,

COPPERPOINT INSURANCE CO., *Respondent Carrier.*

No. 1 CA-IC 14-0090
FILED 11-19-2015

Special Action - Industrial Commission
ICA Claim No.  20122-970236
Carrier Claim No. 1204683
Suzanne Scheiner Marwil, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Day Law Office, Mesa
By Linda C. Day and John F. Day
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Copperpoint Mutual Insurance Co., Phoenix
By Chiko F. Swiney
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Peter B. Swann joined.

---

**N O R R I S**, Judge:

**¶1**　　　In this special action review of an Industrial Commission of Arizona award and decision upon review, petitioner Kurt Steiner argues the administrative law judge ("ALJ") should have excused his untimely hearing request pursuant to A.R.S § 23-947(B)(1) (2012). As relevant here, the statute allows the Commission to excuse an untimely hearing request by a party when the party failed to request a hearing because of "justifiable reliance" on a representation by the Commission. Although we defer to the ALJ's factual findings, we agree with Steiner the record before the ALJ established he had justifiably relied on the Commission's representation in failing to timely request a hearing. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). Accordingly, we set aside the ALJ's award.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　Steiner injured his left knee on August 17, 2012, while employed by the respondent employer, Affinity Technology. The respondent carrier, Copperpoint Mutual Insurance Co., accepted his workers' compensation claim for benefits, and on July 31, 2013, closed his claim with a scheduled 7% permanent partial impairment of his left lower extremity. Copperpoint issued a notice of permanent disability benefits on August 1, 2013, ("August notice"), which, as amended on September 19, 2013, ("September notice"), paid Steiner scheduled disability benefits at 75% of his average monthly wages.

**¶3**　　　Before Copperpoint issued the September notice, Steiner had retained Alex Carpio to represent him in the proceedings and had told Carpio he had sustained a prior work-related injury to his right knee while operating a forklift, which, as we discuss below, would have allowed Steiner to present a claim for an unscheduled industrial injury. *See infra* ¶¶

2

9-10.  Accordingly, after Copperpoint issued its August notice, but before it issued its September notice, Carpio wrote to the Commission and asked it to send him "any and all prior[s] our client may have."  The Commission responded on August 12, 2013. Reporting a 1996 "medical only" claim, the Commission stated it had "NO PRIORS ON MICRO-FISCHE" (the "no-records representation").[1]

¶4          Based on the Commission's no-records representation, Carpio told Steiner that because "there's no paperwork on it [the right knee], no logs," there was "nothing they could do."  He advised Steiner he would not "be filing a Request for Hearing on the [September] Notice of Permanent Disability."

¶5          After Carpio told Steiner the Commission did not have any records establishing he had sustained a prior industrial injury to his right knee, Steiner made further inquiry.  He called the Commission and spoke to a person in "records."  He was told "there was [an] injury, the current injury . . . and that there was another injury in 1996 . . . but it was strictly a medical only."  He "told them there had to be another one and was told no, there's no other—there [were] no other claims."  Steiner also contacted a Commission ombudsman, but obtained no other information.  Steiner could not remember the name of his treating doctor or his attorney for his right knee injury, so he went through his personal records.  He found only a tax return from the mid to late 1980s that reflected a dip in income, which he believed was related to the prior injury.

¶6          The time for Steiner to have filed a request for hearing from the September notice expired by December 18, 2013 ("protest period").  *See* A.R.S. § 23-947(A).  Subsequently, on February 27, 2014, Steiner dismissed Carpio as his attorney.  On March 21, 2014, he met with and retained a new attorney ("second attorney").  On that same day, he went to the Commission in person and "requested [his] records."  He testified, "[a]ll of a sudden I received my 1986 injury [records] from my right knee.  It's three pages of information.  And this [was] the first time that I was able to come across this paperwork."  The "paperwork" Steiner received established he

---

[1]A claims adjuster for Copperpoint also contacted the Commission and asked for "a list of all present and prior claims" for Steiner, and specifically requested the closing medical report, 104 notice of claim status, and 106 notice of permanent disability benefits "if the claim had been awarded permanent benefits."  The Commission responded with the same information it had given to Carpio.

had sustained a May 15, 1986, permanent scheduled industrial right knee injury. Steiner provided the records to his second attorney, who used them to obtain a settlement offer from Copperpoint. Steiner dismissed his second attorney on May 22, 2014. Steiner retained current counsel of record on May 27, 2014, and counsel filed an untimely hearing request on June 2, 2014, to protest Copperpoint's closure of Steiner's left knee injury claim with a scheduled impairment.

¶7 As we discuss in more detail below, the ALJ entered an award for an untimely hearing request without an excuse under A.R.S. § 23-947(B)(1), rejecting Steiner's argument he had justifiably relied on the Commission's no-records representation in not requesting a hearing during the protest period. As relevant here, this statute provides:

> B. As used in this section, "filed" means that the request for a hearing is in the possession of the commission. Failure to file with the commission within the required time by a party means that the determination by the commission, insurance carrier or self-insuring employer is final and res judicata to all parties. The industrial commission or any court shall not excuse a late filing unless any of the following applies:
>
> 1. The person to whom the notice is sent does not request a hearing because of justifiable reliance on a representation by the commission, employer or carrier. In this paragraph, "justifiable reliance" means that the person to whom the notice is sent has made reasonably diligent efforts to verify the representation, regardless of whether the representation is made pursuant to statutory or other authority.

¶8 Steiner timely requested administrative review, but the ALJ summarily affirmed the award.

## DISCUSSION

¶9 When a compensable industrial injury results in a permanent impairment, an award of permanent disability benefits is made depending upon the character of the impairment as either "scheduled" or "unscheduled." *See* A.R.S. § 23-1044(B), (C) (Supp. 2015). Scheduled

injuries listed in A.R.S. § 23-1044(B) are conclusively presumed to adversely affect a claimant's earning capacity and are compensated based on a statutory formula. *Ronquillo v. Indus. Comm'n*, 107 Ariz. 542, 544, 490 P.2d 423, 425 (1971). Impairments not contained in A.R.S. § 23-1044(B) are considered to be unscheduled and are compensated only upon the claimant demonstrating an actual loss of earning capacity. *See* A.R.S. § 23-1044(C).

¶10 Arizona courts have long recognized that when a claimant has multiple impairments, those impairments may result in a greater total disability than the sum of the individual disabilities. *See Ossic v. Verde Central Mines*, 46 Ariz. 176, 188, 49 P.2d 396, 401 (1935); 8 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 90.00 at 90-1 (2015). For that reason, when a claimant sustains a second scheduled industrial injury, the entire injury is conclusively presumed to be unscheduled. *See Ronquillo*, 107 Ariz. at 544, 490 P.2d at 425. Without the benefit of the conclusive presumption, a claimant must prove the presence of a preexisting impairment that adversely affected his or her earning capacity at the time he or she sustained the subsequent injury. *Asbestos Eng'g and Supply v. Indus. Comm'n,* 131 Ariz. 558, 561, 642 P.2d 903, 906 (App. 1982). Here, the claim Steiner sought to present was for an unscheduled industrial injury. But without the means to prove the prior injury, the hearing would have been futile. It was the Commission's own representation that the necessary proof was unavailable that directly caused Steiner's delay in filing.

¶11 In rejecting Steiner's argument he had justifiably relied on the Commission's no-records representation in not requesting a hearing during the protest period, the ALJ reasoned Steiner could not have relied on "any representations . . . regarding the existence or nonexistence of his prior right knee industrial injury claim" because he "knew he had a right knee injury claim and that what the Industrial Commission told Carpio was wrong," but nevertheless "took no action during the protest period for any of the Notices to rectify what he knew was an error" and thus failed "to exercise the due diligence needed to establish justifiable reliance." While we agree the record establishes Steiner knew he had sustained the prior injury, the record also establishes, as Steiner argues, that he made "reasonably diligent efforts" to verify (actually, disprove) the Commission's no-records representation during the protest period and when he was unable to do so, did not request a hearing because, as Carpio properly recognized, with "no paperwork . . . no logs," *see supra* ¶ 4, Steiner had no way to prove his prior scheduled industrial injury for purposes of unscheduling his left knee injury.

**¶12** Further, given that Steiner could not remember the name of his treating doctor or attorney for the 1986 injury, had no records in his personal possession establishing the injury, and had been twice told by the Commission it had no records of that injury, although Steiner knew he had in fact sustained the injury, he had no way to prove it for purposes of contesting Copperpoint's August and September notices. Without any proof or reasonable likelihood of marshalling any proof, requesting a hearing within the protest period would not only have been futile but frivolous.

**¶13** The ALJ also reasoned Steiner failed to exercise due diligence because he could have easily discovered the records if he had gone to the Commission "in person" because he obtained the records from the Commission when he did so. *See supra* ¶ 3. But, the ALJ's reasoning is grounded on speculation—that if Steiner had gone to the Commission during the protest period the Commission would have found his records even though during this same period it told Carpio, Copperpoint's claims adjuster, *see supra* note 1, and Steiner it had no such records.

**¶14** For the foregoing reasons, pursuant to A.R.S. § 23-947(B)(1), Steiner demonstrated he justifiably relied on the Commission's no-records representation in failing to timely request a hearing. Accordingly, we set aside the award.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama