614 P.2d 347

Robert LEWIS, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Tucson Truck Terminal, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA-IC 2183.

Court of Appeals of Arizona, Division 1, Department C.

July 10, 1980.

Lawrence Ollason, Tucson, for petitioner.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

State Compensation Fund, Robert K. Park, Chief Counsel, Phoenix, by George B. Morse, Tucson, for respondents carrier and employer.

## OPINION

JACOBSON, Judge.

The central issue in this special action review of an Industrial Commission award is whether the hearing officer misapplied the law in determining that a preexisting arthritic condition was not an "accident or injury" and therefore could not serve to convert a subsequent scheduled injury into an unscheduled injury.

Petitioner, Robert Lewis, has been unable to work since December 14, 1971 when a tire fell on his left foot while he was employed by respondent employer, Tucson Truck Terminal. Since that date, petitioner has suffered through a bunionectomy, a joint fusion on his left great toe, an amputation of that same toe and several nerve block treatments to relieve his pain. The claimant and the carrier responsible for the injury, the State Compensation Fund, have been parties to a procedural entanglement involving three stationary dates, four separate periods of temporary disability bene-

fits, termination for failure to keep medical appointments, three petitions to reopen, a partially paid permanent scheduled award based on a 35% impairment of the lower left extremity entered in 1973, a lump sum award completing the scheduled award, and a special fund award.

The present review concerns a corrected notice of claim status issued on May 11, 1978 which, in conjunction with a prior notice, terminated benefits paid pursuant to a successful petition to reopen. The notice of claim status declared petitioner's industrially related condition to be stationary as of April 28, 1978 and acknowledged that he suffered a permanent disability. This was followed by a special fund award of $300.00 annually for continuing medical care. A timely request for hearing was made stating: "Applicant is entitled to continuing medical treatment and temporary compensation subsequent to 4/28/78. Alternatively, the Applicant's condition resulted in a permanent unscheduled disability."

Two hearings were held in this matter and several medical reports were admitted. Dr. Larry I. Mann, petitioner's treating physician, testified that petitioner was stationary as of April 19, 1978 and that he had a 30% permanent impairment of the left lower extremity. Medical reports authored by Dr. Mann made numerous references to petitioner's degenerative arthritis in his great left toe which preexisted the injury date. Dr. John Wright Cortner's testimony confirmed Dr. Mann's statements as to the presence of degenerative arthritis at the time of the injury.

Testimony was received from petitioner indicating that prior to the industrial injury he suffered from pain in his feet and knees and in one hip. He stated that this forced him to change jobs to "lighter work." Dr. Cortner testified that applicant's complaints and change in jobs prior to the injury were consistent with an arthritic degenerative process.

Based on the evidence, the presiding hearing officer entered an award which held that petitioner was entitled to temporary disability payments from June 26, 1975 through April 28, 1978 and that petitioner's condition was medically stationary as of April 28, 1978, with a 35%[1] disability of the lower left extremity. The hearing officer rejected the claimant's argument that the preexisting arthritis served to convert the industrial injury to the non-scheduled variety. The award was affirmed on administrative review.

Petitioner contends that the hearing officer misinterpreted and misapplied the case law in addressing the issue of whether petitioner was entitled to an unscheduled award. We agree.

The hearing officer's relevant findings were as follows:

In the case at bar, there having been no prior injury or accident, either "industrial" or "non-industrial", the threshold prerequisite to reaching the question of converting the applicant's "scheduled injury" to an "unscheduled injury" on the above-identified basis [arthritic condition] is lacking . . . . [D]ispositively of the issue at bar . . . is that there was apparently not, in the case at bar, a "prior" injury or accident, either "industrial" or "non-industrial" . . . .

The hearing officer was obviously operating under the misconception that an "injury or accident" must cause a preexisting disabling condition in order for that condition to operate to remove a subsequent scheduled injury from the benefits schedule. We find no such "injury or accident" requirement in the workmen's compensation statutes or case law. Indeed, the cases are to the contrary. In *Leon v. Industrial Commission,* 10 Ariz.App. 470, 459 P.2d 749 (1969), congenital deafness was held to constitute a sufficient preexisting disability to convert an industrial injury to the hand, which would have otherwise been sched-

---

1. While Dr. Mann rated the impairment at 30%, he further testified that the impairment was the same percentage as had been previously awarded in 1973. As the previous award was for a 35% impairment, the hearing officer adopted the 35% figure, giving "the applicant the benefit of the doubt."

uled, into an unscheduled class. Similarly, in *Ronquillo v. Industrial Commission*, 5 Ariz.App. 233, 425 P.2d 135 (1967), the court held that preexisting hypertension, if shown to be partially disabling at the time of injury, would convert a 50% loss of function in the left leg into the unscheduled category.

In the award here, the hearing officer relied on the following language in *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978), to support his "injury or accident" prerequisite:

> We do not believe that any physical impairment, the result of a prior non-industrial *accident*, is a "previous disability" for the purposes of Paragraph E [of A.R.S. § 23–1044] unless there is some evidence, no matter how slight, that it is also an earning capacity disability. To hold that after a non-industrial *injury*, any physical impairment will convert a second scheduled injury into an unscheduled injury, would, in effect, do completely away with all scheduled injury awards since it is a rare person indeed who does not have some previous physical impairment *as a result of some prior injury.*

118 Ariz. at 483, 578 P.2d at 162. (Emphasis supplied). From the context of these statements it is evident that the court was not addressing the necessity of an injury or accident, but rather was speaking to the requirement that the preexisting condition result in an earning capacity disability. We reiterate the following remarks recently made by this court in the post-*Alsbrooks* opinion of *Miller v. Industrial Commission*, 122 Ariz. 493, 494, 595 P.2d 1038, 1039 (1979):

> The Court in *Alsbrooks* appears to have assumed that the earning capacity disability would be the result of a previous injury. A previous *injury* is, however, apparently not a necessary prerequisite to converting a scheduled injury into an unscheduled injury.

(Emphasis in original.)

■ Here, respondents do not appear to contest that petitioner was suffering from an arthritic condition at the time of his industrial injury. The evidence is uncontroverted in that regard. We hold that petitioner's degenerative arthritis, even though not the result of an "injury or accident," if shown to have resulted in a loss of earning capacity, can operate to convert a subsequent scheduled injury into an unscheduled injury.[2] The hearing officer's finding to the contrary is error.

Normally, under these circumstances we would be obligated to set aside the award. However, the record indicates that even had the hearing officer applied the appropriate law, the result—the denial of unscheduled benefits—would not have been altered.

■ The petitioner had the burden of proving not only the presence of a preexisting impairment, but also that the condition adversely affected his earning capacity at the time of the subsequent injury. *See Alsbrooks v. Industrial Commission, supra; Modern Industries, Inc. v. Industrial Commission*, 125 Ariz. 283, 609 P.2d 98 (App. 1980). While the hearing officer expressed reservations about petitioner's proof in this regard, he apparently found it unnecessary to decide the issue given his disposition that there was no "injury or accident." Our review of the record reveals a fatal defect in petitioner's proof of a preexisting earning capacity disability. If the hearing officer had reached this issue and had concluded that an earning impairment attributable to the arthritis had preexisted the foot injury, we would have been compelled to set aside the award for lack of reasonable evidence on which to base that finding. By

---

**2.** Our review of the record reveals that the proper opportunity for the claimant to have raised his argument concerning the effect of the preexisting arthritic condition would have been when the claim was initially closed with a scheduled award in 1973. That award was not contested and became final. However, it would be inappropriate for us to address the *res judicata* effect of the 1973 award because it has not been raised before the Industrial Commission or on this appeal. *See Cotton v. Industrial Commission*, 26 Ariz.App. 58, 546 P.2d 35 (1976).

analogy, we conclude here that petitioner did not meet his burden on this issue as a matter of law.

The only testimony elicited concerning the effect of petitioner's degenerative arthritis on his earning capacity was given by petitioner and Dr. Cortner. As previously noted, petitioner stated that he had switched from doing "heavy work" (road work, logging and heavy duty mechanic work) to the "lighter work" of greaseman and flat tire repairman, due to pain in his feet and knees and in one hip. Apparently, this occupational transition was made eleven years prior to the industrial incident and no arthritic pain was "bothering" petitioner at the time of the injury. Dr. Cortner merely testified that these complaints and job changes were consistent with degenerative arthritis.

Even assuming that the arthritic condition was a substantial factor in precipitating petitioner's job transfer, this testimony leaves the record devoid of evidence of wages either prior to or subsequent to the occupational change. We fail to find an inference of earning capacity reduction based solely on the transition to "lighter work." Mere restrictions on the range of petitioner's employment do not demonstrate a loss of earning capacity. *See White v. Industrial Commission*, 87 Ariz. 154, 348 P.2d 922 (1960); *Globe Indemnity Co. v. Industrial Commission*, 24 Ariz.App. 49, 535 P.2d 1053 (1975).

In summation, although the hearing officer erred in his application of the law, his ultimate conclusion denying conversion to allow payment of unscheduled benefits was correct.

Petitioner also argues that the hearing officer's award failed to make adequate findings (1) as to the effect of the industrial injury on other conditions from which petitioner was suffering and (2) as to the stationary date. In addressing the impact of the injury on the other conditions, the hearing officer quoted the following language from a post-hearing letter submitted by petitioner's counsel:

I do not believe that the evidence was sufficient to meet the applicant's burden of showing a pre-existing disability prior to the industrial injury on the basis of a preexisting hypertension and/or arteriosclerotic (sic) heart disease. Likewise, I do not believe the evidence shows a firm diagnosis of thrombophlebitis relative to the industrial injury which would be sufficient to convert this case to an unscheduled type injury.

Given these concessions, the hearing officer did not find it necessary thereafter to discuss the hypertension, arteriosclerotic heart disease, or thrombophlebitis and we conclude that it would have been redundant for him to have done so. As to the statutory date, the award specifically stated:

The evidence herein indicates, and it is so found,

that the applicant's condition in issue was medically stationary on April 19, 1978, with a thirty-five percent (35%) disability of the left lower extremity.

Dr. Mann's uncontroverted medical testimony reasonably supports this date.

Based on the foregoing, the award is affirmed.

CONTRERAS, P. J., and OGG, C. J., concur.