620 P.2d 218

**Joseph A. BORSH, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Sungate Development Corporation, Respondent Employer,**

**Western Fire Insurance Company, Respondent Carrier.**

**No. 15046–PR.**

Supreme Court of Arizona, In Banc.

Nov. 17, 1980.

Davis & Eppstein, P. C., by Robert W. Eppstein and David Bartlett, Tucson, for petitioner.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Slutes, Browning, Zlaket & Sakrison, P. C. by James M. Sakrison, Tucson, for respondents Employer and Carrier.

CAMERON, Justice.

We granted Joseph A. Borsh's petition for review of a decision and opinion of the Court of Appeals, Division One, affirming the Industrial Commission's award of scheduled benefits under A.R.S. § 23–1044(B)(21). We have jurisdiction pursuant to A.R.S. § 12–120.24, Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S., and Rule 8(b), Rules of Procedure for Special Actions, 17A A.R.S.

We must answer the following questions on appeal:

1. Was there a presumption that petitioner's previous non–industrially related physical disability was an earning capacity disability which would convert a subsequent scheduled injury to an unscheduled injury?

2. Did the evidence reasonably support the hearing officer's finding that the petitioner's disability was not an earning capacity disability?

The facts necessary to a resolution of these issues are as follows. On 1 November 1975, Joseph Borsh retired from the United States Army after completing twenty years of service. At Borsh's pre–retirement physical examination, degenerative joint disease was discovered in the ankles, knees and back. The Veterans Administration rated Borsh's physical disability at 30% but did not impose work limitations. Until the time of the physical examination, Borsh was unaware of the disease, and had not experienced any physical problems due to the disease. Borsh testified that as a civilian he would not look for jobs that involved heavy lifting, but believed he was capable of doing any job.

In March 1976, Borsh accepted employment as a security guard at a wage rate of

$2.40 per hour. After performing satisfactorily in a store where he could sit down, he was transferred to a store where prolonged standing was required. The prolonged standing caused pain in Borsh's knee joints, and Borsh quit work in September 1976.

In that month he began working as a night manager for a janitor service at $2.75 per hour. Initially, his duties were of a supervisory nature, but the physical demands of the job increased. He quit his job in September 1977.

After quitting his job for the janitor service, he began working as a carpenter's helper at $4.00 per hour. This job required some physical labor, such as carrying material, sawing lumber, framing and roofing. On 14 October 1977, Borsh injured his right knee in an industrial accident.

Shortly after the accident, Borsh had an employment physical with the Post Office. He had applied for a position with the Post Office immediately after his discharge from the Army in 1975, but had been placed on a waiting list. On 11 October 1978, Borsh was informed that he did not meet the physical requirements for employment "because of chronic joint disease."

Western Fire Insurance Company determined that the 14 October 1977 industrial injury caused a 10% physical impairment of the right leg, and that Borsh was entitled to schedule disability benefits. At the request of Borsh, a formal hearing was held. The hearing officer, on 9 August 1979, found that the petitioner had failed to carry his burden of proving that the joint disease was an earning capacity disability, and that therefore the joint disease was not a "previous disability" under A.R.S. § 23–1044(E). Petitioner was accordingly given a scheduled award pursuant to A.R.S. § 23–1044(B). The Court of Appeals, Division One, affirmed the award, and we granted Borsh's petition for review of the decision and opinion of the Court of Appeals.

## IS THERE A PRESUMPTION THAT PETITIONER'S SERVICE DISABILITY IS AN EARNING CAPACITY DISABILITY?

The hearing officer held:

" * * * the disease suffered by the applicant does not fall under the scheduled category of A.R.S. § 23–1044B, so no presumption of impaired earning capacity arises in his favor. * * * "

▮ Whether the preexisting joint disease will operate to convert a subsequent scheduled disability into an unscheduled disability depends upon a showing that this joint disease resulted in a loss of earning capacity. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978). If the joint condition was a prior *industrially related* scheduled disability, then there would be a conclusive presumption that the joint disease resulted in a loss of earning capacity. If the joint condition was a prior nonindustrially related scheduled disability, then there would be a rebuttable presumption that it was an earning capacity disability.

"We hold that where there is a prior scheduled industrially related injury, the Commission may not ignore the previous injury when the workman suffers a second industrial injury. * * * In the case of a prior non–industrially related injury which would have been a scheduled award had it been industrially related, there is a presumption that the prior injury had an effect on the earning capacity of the workman at the time of the second injury although this presumption can be overcome * * *. *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 544, 490 P.2d 423, 425 (1971).

These presumptions do not apply if the prior disability is a non–scheduled disability:

"The abdominal wound suffered by the claimant would not have been scheduled under A.R.S. § 23–1044(B) so no presumption of impaired earning capacity arises in favor of the claimant. * * * " *Yanez v. Industrial Commission*, 21 Ariz.App. 367, 370, 519 P.2d 220, 223 (1974), petition for review denied.

Petitioner suffers from a joint disease which was disabling to both his back and

knees. Disability of the leg is scheduled, A.R.S. § 23–1044(B)(15), while disability of the back is unscheduled, not being listed in subsection B of A.R.S. § 23–1044. A combination of both disabilities would be treated as unscheduled. *Miller v. Industrial Commission*, 110 Ariz. 229, 517 P.2d 91 (1973). Thus, had petitioner only a disability to the knees, he would have had a scheduled disability, and the subsequent scheduled injury would have been treated as unscheduled. *Wollum v. Industrial Commission*, 100 Ariz. 317, 414 P.2d 137 (1966), overruled in part by *Ronquillo v. Industrial Commission*, supra. By suffering disabilities to the back as well as the knees, petitioner loses the presumption that he suffered an earning capacity disability. We think this illogical. Admittedly, there are inconsistencies in the statutory distinction between benefits received for scheduled and unscheduled disabilities, the scheduled disabilities generally being of less benefit to the injured workman, but these inconsistencies are provided by statute which we may not change:

> "However attractive it may be to wipe away the artificial and illogical differences between scheduled and unscheduled awards, that is not our prerogative but the responsibility of the legislature." *Alsbrooks v. Industrial Commission*, supra, 118 Ariz. at 483, 578 P.2d at 162.

This does not mean, however, that by case law we must create additional inconsistencies to the detriment of the injured workman. The result of the hearing officer's holding in this case is the greater the previous disability, the lesser the potential benefit. This does not comport with the philosophy of the Workmen's Compensation Act that it must be construed liberally to effectuate the humanitarian reasons for which the statute was enacted:

> " * * * The workman's compensation laws should be given a liberal construction in keeping with the humanitarian and compassionate motives which caused their adoption. (citations omitted)" *Bierman v. Industrial Commission*, 2 Ariz. App. 548, 551, 410 P.2d 666, 669 (1966).

We think that the previous scheduled disability to the knees caused by the joint condition, standing alone, is sufficient to support a presumption of an earning capacity disability, and this presumption does not disappear because the condition also affects the back. The hearing officer was in error in not giving the petitioner the benefit of the rebuttable presumption that his previous disability was an earning capacity disability.

## WAS THE AWARD REASONABLY SUPPORTED BY THE EVIDENCE?

The hearing officer determined that the petitioner had failed to sustain his burden of proof of showing a loss of earning capacity as a result of his previous disability. Finding 7 states:

> "7. While the evidence in the instant case establishes that the applicant's preexisting disease may have caused him to terminate one or two jobs, it does not establish that it was affecting his earning power at the time of the industrial injury. Any impairment of earning capacity by reason of the preexisting disease did not occur until after the applicant's scheduled industrial injury. * * * *"

The statute reads:

> "D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to * * * the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury any wages received for work performed subsequent to the injury, and the age of the employee at the time of the injury." A.R.S. § 23–1044(D).

Our duty on review is to determine whether the Commission's award is supported by reasonable evidence. *Eagle Indemnity Co. v. Hadley*, 70 Ariz. 179, 218 P.2d 488 (1950). If "the award was based and proceeds upon an erroneous and improper theory, the above rule would not

preclude us from correcting manifest error * * *." *Hoffman v. Brophy*, 61 Ariz. 307, 312, 149 P.2d 160, 162 (1944).

■ In the instant case, even if the petitioner was not given the benefit of the presumption discussed above, we do not believe that the hearing officer's decision was supported by reasonable evidence. By Finding Number 7, it is obvious that the hearing officer was basing his decision on the rejection for employment by the Post Office only. There were other examples of petitioner's loss of earning capacity–the two jobs he had to quit because of his joint condition, for example. The hearing officer erred in considering only one aspect of petitioner's job history, rather than petitioner's complete job history.

> "[I]n this case, we have evidence * * * that petitioner was unable to retain a more lucrative employment as a truck driver because of his prior non–industrial injury. Thus, there is some evidence that petitioner's hearing defect may have affected his *potential* earning capacity. Are we then concerned with *actual* earning capacity or are we concerned with *potential* earning capacity? We think the latter." *Sutton v. Industrial Commission*, 16 Ariz.App. 334, 336, 493 P.2d 501, 503 (1972).

And:

> "The word 'disability,' as used in our Compensation Act does not mean disablement to perform the particular work petitioner was doing at the time of his injury, but refers to *injuries which result in impairment of earning power generally.*" *Savich v. Industrial Commission*, 39 Ariz. 266, 270, 5 P.2d 779, 780 (1931). (emphasis added)

Both the employment rejection by the Post Office and the fact that the petitioner was forced to quit two jobs are evidence that petitioner suffered a previous loss of earning capacity at the time of the industrial injury, and the hearing officer erred in ignoring these facts in determining whether the industrial injury was scheduled or unscheduled.

As to petitioner's 30% physical disability rating, we have previously stated:

> "As to the instant case, the prior injuries which resulted in a 40% service–connected permanent disability are most certainly earning capacity disabilities. It is unreasonable to find that, as to a man engaged in industrial labor, a 40% permanent disability does not result in a disability for work." *Alsbrooks v. Industrial Commission*, supra, 118 Ariz. at 484, 578 P.2d at 163.

The decision of the Court of Appeals, Division One, is reversed and its memorandum decision vacated. The award is set aside.

HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.

STRUCKMEYER, Chief Justice, concurring.

I concur in the result.