763 P.2d 271

ADAMS INSULATION COMPANY, and
Fremont Indemnity Company,
Petitioners,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Steve Lopez, Respondent Employee.

No. 1 CA–IC 3811.

Court of Appeals of Arizona,
Division 1, Department B.

July 14, 1988.
Review Granted Nov. 15, 1988.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent Industrial Com'n of Arizona.

Tretschok, McNamara & Clymer by Dale D. Tretschok, Tucson, for respondent employee.

OPINION

HAIRE, Judge.

In this review of an Industrial Commission award, we consider the single issue of whether the claimant's preexisting low in-

tellectual capacity constituted a cognizable disability that could serve as the basis for converting a subsequent scheduled disability to an unscheduled disability.

The respondent employee (claimant) injured his knee while working for Adams Insulation Company. Petitioner Fremont Indemnity Company, Adams' insurance carrier, accepted the claim for benefits and closed it without permanent impairment after the claimant underwent arthroscopic surgery.

The claimant protested this termination, and a series of hearings was held. At the hearings, the claimant's orthopedic evidence establishing that his knee rated a 15 percent permanent impairment was essentially uncontradicted. The impairment's proper classification as scheduled or unscheduled, however, was disputed. The administrative law judge issued an award classifying the impairment as an unscheduled disability.

■ Arizona Revised Statutes § 23–1044(B) (Supp.1987) establishes a schedule of compensation for industrially related injuries to certain parts of the body. The section provides that, in addition to temporary total disability benefits, claimants sustaining the specified injuries will receive compensation equal to 55 percent of their average monthly wage for a predetermined number of months. The number of months varies with the injury in question. Compensation for scheduled injuries is not based on the claimant's actual loss of earning capacity, but rather is based upon the presumption that the enumerated injuries result in a specified percentage of permanent partial loss of earning capacity. *Yanez v. Industrial Commission*, 21 Ariz. App. 367, 369, 519 P.2d 220, 222 (1974).

■ Injuries causing a permanent partial loss of earning capacity that are not enumerated in the schedule of compensation established by A.R.S. § 23–1044(B) are classified as unscheduled injuries and are compensated in accordance with A.R.S. § 23–1044(C) (Supp.1987). Under this section, claimants sustaining unscheduled injuries receive compensation based upon a percentage of their actual loss of earning capacity for the period during which their disability continues.

■ Arizona Revised Statutes § 23–1044(E) (Supp.1987)[1] has been interpreted to require that an injury that would normally be compensated as scheduled under A.R.S. § 23–1044(B) should be compensated as unscheduled in certain circumstances. This result is required when the claimant is already suffering from an earning capacity disability when the scheduled injury occurs. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 483, 578 P.2d 159, 162 (1978). The conversion of an otherwise scheduled disability to an unscheduled one is based upon the recognition that the claimant's total disability in such a situation may be more severe than the sum of his individual disabilities. *Fremont Indemnity Company v. Industrial Commission*, 144 Ariz. 339, 341–42, 697 P.2d 1089, 1091–92 (1985).

At the conclusion of the hearings in the present case, the administrative law judge requested memoranda on the issue of whether the claimant's knee injury should be compensated as a scheduled or an unscheduled disability. Claimant's first argument presented in his post-hearing memorandum on the "unscheduling" issue was that, in addition to the knee injury, his industrial fall had resulted in an abnormal fear of heights (acrophobia). The administrative law judge rejected this contention. As a second argument, the claimant maintained that his low intellectual capacity[2] constituted a preexisting earning capacity

---

1. Section 23–1044(E) (Supp.1987) provides as follows:
   "E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

2. Testimony presented at the hearing established that the claimant had an IQ in the 76 to 81 range and that he suffered from learning disabilities. However, his preinjury average monthly wage was set at $1200.

disability. He therefore contended that A.R.S. § 23–1044(E) required that his subsequent knee impairment be converted from a scheduled to an unscheduled disability. Fremont countered this contention by asserting that the claimant's low intellectual capacity was not a cognizable disability within the scheme established by the workers' compensation statutes. Fremont argued that the low intellectual capacity could not constitute a "previous disability" within the meaning of A.R.S. § 23–1044(E), and therefore it could not serve as the basis for converting the claimant's otherwise scheduled knee disability to an unscheduled disability. After reviewing the record and the post-hearing memoranda, the administrative law judge issued an award classifying the disability as unscheduled.

▆ As a general rule, there is no requirement that the claimant's preexisting disability be the result of an accident before it can serve as the basis for converting a subsequent otherwise scheduled disability to an unscheduled one. *See, e.g., Lewis v. Industrial Commission,* 126 Ariz. 266, 614 P.2d 347 (App.1980) (degenerative arthritic disease); *Leon v. Industrial Commission,* 10 Ariz.App. 470, 459 P.2d 749 (1969) (congenital deafness). However, some nonaccidental conditions, even if they affect a claimant's earning capacity, cannot serve as the basis for such a conversion. *See Miller v. Industrial Commission,* 122 Ariz. 493, 595 P.2d 1038 (App.1979).

In *Miller,* the claimant asserted that his status of being black, illiterate, and of marginal intelligence constituted a preexisting disability that could serve as the basis for converting his scheduled leg impairment to an unscheduled disability. Although we recognized that a previous injury was unnecessary and assumed that the claimant's status resulted in a loss of earning capacity, we nevertheless affirmed an award for a scheduled disability. We explained the basis of our decision as follows:

"In order for an earning capacity disability to operate to convert a later scheduled disability into unscheduled, the earning capacity disability must be one that

would have been cognizable under our workmen's compensation statute had it resulted from an industrial accident. The status type of disability claimed by petitioner can never be the result of an industrial injury. For that reason it would be a gross perversion of the legislative and judicial intent evidenced in the statutes and case law of Arizona to allow a 'disability' of the sort claimed by petitioner to convert his leg impairment into an unscheduled disability."

*Id.* at 494, 595 P.2d at 1039.

Fremont maintains that *Miller* controls the outcome of the present case because the claimant's noncognizable status in *Miller* included marginal intelligence. The claimant responds that *Miller* defined a noncognizable status as one that could never be the result of an industrial injury. He argues that while this definition applies to the conditions of being black and illiterate, it does not apply to the condition of being intellectually impaired because such a condition can be the result of a head injury. He notes that he presented evidence to this effect and asserts that under *Leon,* he was not required to prove that his impairment was actually caused by an injury.

The evidence established that the claimant's low intellectual capacity could have been caused by genetic, developmental, or organic factors. It further established that a traumatic head injury could produce organic impairment. Although the claimant's history included several head injuries, there was no evidence establishing a probable connection between any of these injuries and his low intellectual capacity. There was evidence which established that the intellectual deficiency was one of longstanding duration. At the conclusion of the hearings, the administrative law judge found that the cause of the claimant's low intellectual capacity was unclear. Because the administrative law judge was unable to find that the claimant's low intelligence was the result of an injury, we must assume for the purposes of our review that it was an innate condition. Consequently, our decision in *Miller* is controlling.

■ An innate low intellectual capacity, like the condition of being black or illiterate, can never be the result of an industrial injury. Such conditions may result in a comparative lack of earning potential. However, in our opinion the legislature never intended losses of this type to be compensable within the scheme established by our workers' compensation statutes. Because the claimant's innate low intellectual capacity constituted a noncognizable status rather than a cognizable disability, it could not serve to convert his subsequent otherwise scheduled leg impairment to an unscheduled disability. We therefore set the award aside.

BROOKS, P.J., and EUBANK, J., concur.