789 P.2d 1056

**ADAMS INSULATION COMPANY, and Fremont Indemnity Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Steve Lopez, Respondent Employee.**

**No. CV–88–0390–PR.**

Supreme Court of Arizona, En Banc.

March 27, 1990.

Jones, Skelton & Hochuli by Mr. Calvin Harris, Phoenix, for petitioners.

Industrial Com'n by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

Tretschok, McNamara & Clymer by Dale D. Tretschok, Tucson, for respondent employee.

## OPINION

HATHAWAY, Judge.

Claimant Steve Lopez (Lopez) seeks review of a Court of Appeals opinion setting aside his worker's compensation award. The court vacated the award based on the reasoning in its prior opinion, *Miller v. Industrial Comm'n,* 122 Ariz. 493, 595 P.2d 1038 (App.1979), that an innate low intellectual capacity can never be the result of an industrial injury. *Adams Insulation*

*Co. v. Industrial Comm'n,* 158 Ariz. 451, 763 P.2d 271 (App.1988). We have jurisdiction under Ariz. Const., art. 6, § 5(3); A.R.S. §§ 12–120.24 and 23–948. We granted review pursuant to Ariz.R.Civ. App.P. 23, 17B A.R.S.

## FACTS

Lopez injured his knee while working for Adams Insulation Company. On August 26, 1985, he fell off a ladder at work, tearing the anterior cruciate ligament of his right knee. Adams' insurance carrier, Fremont Indemnity Company (Fremont), accepted the claim for benefits and closed it finding no permanent disability after Lopez underwent arthroscopic surgery.

Lopez timely protested the termination and a series of hearings was held. The orthopedic evidence established that his right knee rated a 15% permanent disability. The disability's classification as scheduled or unscheduled, however, was disputed. The administrative law judge (ALJ) issued an award classifying the disability as an unscheduled injury. He based his decision on testimony that Lopez had an IQ of 76, representing borderline intelligence, and testimony that Lopez' low intellectual capacity and his knee injury would limit his ability to compete for any but unskilled jobs. He also found that Lopez' preexisting intellectual limitations and learning disorder caused some loss of earning capacity as of the time of the knee injury. The Court of Appeals set the award aside, holding that Lopez' preexisting low intellectual capacity constituted a non-cognizable status, rather than a cognizable disability, and therefore could not serve to convert his otherwise scheduled leg disability to an unscheduled disability.

## DISCUSSION

■ No challenge has been raised to the determination by the ALJ that Lopez has suffered a 15% permanent disability impairment to his right knee. This type of disability is a "scheduled" disability that falls within the provisions of A.R.S. § 23–1044(B). The statute provides for

benefits to be paid for a specified number of months based upon the injury in question. Compensation is based, not on claimant's actual loss of earning capacity, but rather on the presumption that the injuries result in a specified percentage of permanent partial loss of earning capacity. *Yanez v. Industrial Comm'n*, 21 Ariz.App. 367, 369, 519 P.2d 220, 222 (1974).

■ Permanent partial loss of earning capacity as a result of an injury not listed in the scheduled compensation established by A.R.S. § 23–1044(B) is compensated in accordance with A.R.S. § 23–1044(C) as an unscheduled injury. Compensation for unscheduled injuries is based on a percentage of the claimant's actual loss of earning capacity for the period during which the disability continues.

■ In certain circumstances, an injury that would normally be compensated as scheduled under A.R.S. § 23–1044(B) is required to be compensated as unscheduled. A.R.S. § 23–1044(E). This occurs when the claimant is already suffering from an earning capacity disability when the scheduled injury occurs. *Alsbrooks v. Industrial Comm'n*, 118 Ariz. 480, 483, 578 P.2d 159, 162 (1978) (Struckmeyer, J., dissenting in part).[1]

■ When the claimant suffers more than one disability, whether or not occasioned by an injury contemporaneous with the subsequent injury, the result may be a total earning capacity disability greater than the sum of the individual disabilities. Accordingly, A.R.S. § 23–1044(E) converts an otherwise scheduled subsequent disability award into an unscheduled one. *Fremont Indem. Co. v. Industrial Comm'n*, 144 Ariz. 339, 697 P.2d 1089 (1985). This conversion recognizes that the claimant's total disability may be more severe than the sum of his individual disabilities. Id; *2 A. Larson, Workmen's Compensation Law § 59.00* (1987).

■ If the prior non-industrial disability would have supported a scheduled award "had it been industrially related, there is a presumption that the prior injury had an effect on the earning capacity of the workman at the time of the second injury although this presumption can be overcome." *Ronquillo v. Industrial Comm'n*, 107 Ariz. 542, 544, 490 P.2d 423, 425 (1971). No such presumption of lost earning capacity applies if the prior disability is unscheduled. *Borsh v. Industrial Comm'n*, 127 Ariz. 303, 305, 620 P.2d 218, 220 (1980). However, if a claimant proves an actual loss of earning capacity at the time of the second injury as a result of the prior disability, the second scheduled disability is converted into an unscheduled disability. See *Yanez*.

In its opinion, the Court of Appeals correctly stated that "there is no requirement that the claimant's preexisting disability be the result of an accident before it can serve as the basis for converting a subsequent otherwise scheduled disability to an unscheduled one." 158 Ariz. at 453, 763 P.2d at 273. The opinion then holds that because the ALJ could not state that Lopez' low intelligence was clearly the result of an injury, the court had to assume that it was an innate condition. The court then found its decision in *Miller* controlling.

In *Miller*, the claimant, who was black, illiterate, and of marginal intelligence, asserted that his status constituted a preexisting disability that could be the basis for converting his scheduled leg injury to an unscheduled disability. The court rejected the claim because "[t]he status type of disability claimed by petitioner can never be the result of an industrial injury." 122 Ariz. at 494, 595 P.2d at 1039. The court applied the *Miller* rationale to Lopez and held that his low intellectual capacity was a non-cognizable status. We disagree.

■ A.R.S. § 23–1044(E) speaks of "a previous disability" as the prerequisite for converting a subsequent scheduled injury to an unscheduled one. In *McKinney v.*

---

1. For a discussion of this case see comment, *Workmen's Compensation Law,* 21 Ariz.L.Rev. 255 (1979).

*Industrial Comm'n,* 78 Ariz. 264, 266, 278 P.2d 887, 888 (1955), we discussed a prior version of § 23–1044(E) [A.C.A. Supp.1954, § 56–957(e)] and stated: "The thought is advanced that possibly when the statute speaks of prior disability, prior industrial accident disability only is meant. We cannot agree with this. We cannot read the word 'industrial' into the statute which merely mentions previous disability." By the same reasoning, we do not believe that the word "injury" can be read into A.R.S. § 23–1044(E). We approve of the reasoning in *Lewis v. Industrial Comm'n,* 126 Ariz. 266, 614 P.2d 347 (App.1980) (degenerative arthritic disease) and *Leon v. Industrial Comm'n,* 10 Ariz.App. 470, 459 P.2d 749 (1969) (congenital deafness) and hold that a claimant's preexisting disability does not have to be the result of an accident or industrial injury to satisfy § 23–1044(E). Lopez' borderline intellectual capacity constitutes a prior disability for purposes of that section.

"[W]hen the statute says 'disability,' it means earning capacity disability even though the effect upon the workman's earning capacity may be minimal." *Alsbrooks,* 118 Ariz. at 484, 578 P.2d at 163. The burden is on claimant to show a loss of earning capacity. *Felker v. Industrial Comm'n,* 134 Ariz. 19, 653 P.2d 369 (App. 1982).

Lopez introduced testimony from Ron Baker, a certified rehabilitation counselor and labor market consultant, to the effect that Lopez had suffered some loss of earning capacity as a result of his preexisting intellectual limitations and learning disorder as of the date of his knee injury. Fremont argued below that, in spite of Mr. Baker's testimony, there was no evidence that Lopez' intellectual limitations detracted from his efficiency in ordinary employment or in any way diminished his ability to function in the ordinary pursuits of life.

As we stated in *Pullins v. Industrial Comm'n,* 132 Ariz. 292, 645 P.2d 807 (1982), certain disabilities are so severe that they must be considered as an earning ca-

pacity disability. There we spoke of the loss of an arm, a leg or an eye. Likewise, a borderline IQ may be considered disabling and "a severe disadvantage in acquiring a dependable new means of livelihood." *A. Larson.* § 57.51(d). A rehabilitation psychologist testified that Lopez' IQ of 76 fell in the borderline range of intellectual functioning at about the 7th percentile. Thus, if 100 people in Lopez' age group were tested, 93 would score higher than he. That Lopez had adapted to his intellectual disability does not rebut the presumption that he had suffered an earning capacity loss at the time of the subsequent injury. To paraphrase what we held in *Pullins,* even though Lopez had adapted to his marginal IQ to the point that he was able to function adequately and even competitively, the record supports the ALJ's conclusion that his mental disability detracted from his earning efficiency in ordinary employment.

To the extent that it classifies marginal intelligence or low intelligence as a non-cognizable status, *Miller* is overruled.

The opinion of the Court of Appeals is vacated and the award is affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.

MOELLER, J., did not participate in the determination of this matter. HATHAWAY, J., was appointed to sit in his stead pursuant to Article VI, Section 3 of the Arizona Constitution.