NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HAIDAR A. OSMAN, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

THE TUNGLAND CORPORATION, *Respondent Employer*

SCF ARIZONA, *Respondent Carrier.*

No. 1 CA-IC 13-0043
FILED 3-18-2014

Special Action - Industrial Commission
ICA NO. 20100-290128
Carrier Claim No. 0920100

Layna Taylor, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Fendon Law Office, P.C., Phoenix
By Janell Youtsay
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

SCF Arizona, Phoenix
By Chiko F. Swiney
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Jon W. Thompson joined. Judge Peter B. Swann dissented.

---

**G O U L D** Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for scheduled disability benefits. One issue is presented on appeal: whether the administrative law judge ("ALJ") erred by finding that the petitioner employee's ("claimant's") preexisting diabetes did not constitute an earning capacity disability at the time he sustained his September 9, 2009 industrial injury. Because we find that the claimant failed to meet his burden of proving an existing earning capacity disability, we affirm the award.

## I. JURISDICTION AND STANDARD OF REVIEW

**¶2**        This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rule of Procedure for Special Actions 10 (2009).[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

---

[1]        Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## II. PROCEDURAL AND FACTUAL HISTORY

¶3        On September 9, 2009, the claimant worked as a caregiver in a group home for the respondent employer, Tungland Corporation ("Tungland").  On that date, he struck his left foot on a piece of furniture while going to assist a resident and sustained a laceration to his small toe. The laceration became infected and due to the claimant's Type 1 diabetes and preexisting peripheral vascular disease, he ultimately required a below knee amputation of his left leg.

¶4        The claimant filed a workers' compensation claim, which was denied for benefits, and he timely requested an ICA hearing. Following three ICA hearings, an ALJ found his claim compensable.  The respondent carrier, SCF Arizona ("SCF"), then closed the claimant's claim with a scheduled permanent impairment.  The claimant timely protested and asserted that his claim should have been closed with an unscheduled permanent impairment because of his preexisting diabetes.

¶5        The ICA held three hearings for testimony from the claimant and two physicians.  Following the hearings, the ALJ entered an award for scheduled permanent partial disability benefits.  She found that the claimant had failed to prove that his preexisting diabetes constituted an earning capacity disability at the time of his September 2009 industrial injury, which would allow his 2009 injury to be unscheduled.  The ALJ summarily affirmed her Award on administrative review, and the claimant brought this appeal.

## III. DISCUSSION

¶6        The claimant argues that his preexisting diabetes constituted an earning capacity disability at the time of his September 9, 2009 industrial injury, and therefore, his scheduled left leg injury should have been unscheduled.  SCF responds that the ALJ correctly concluded that the claimant failed to present sufficient evidence of an existing earning capacity disability at the time of the September 2009 injury.  Arizona courts have long recognized that when a claimant has multiple impairments, those impairments may result in a greater total disability than the sum of the individual disabilities.  *See Ossic v. Verde Central Mines*, 46 Ariz. 176, 188, 49  P.2d 396, 401 (1935) .

¶7        Arizona Revised Statutes § 23-1044(E) determines when a scheduled injury will be unscheduled:

> In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

¶8        The Arizona Supreme Court has interpreted this statute to require that a scheduled injury be unscheduled if at the time of the injury, the claimant suffered from a previous impairment that affected his earning capacity. *Alsbrooks v. Indus. Comm'n*, 118 Ariz. 480, 483, 578 P.2d 159, 162 (1978).

> *. . . We do not believe that any physical impairment, the result of a prior non-industrial accident, is a 'previous disability' for the purposes of Paragraph E unless there is some evidence, no matter how slight, that it is also an earning capacity disability.* To hold that after a non-industrial injury, any physical impairment will convert a second scheduled injury into an unscheduled injury, would, in effect, do completely away with all scheduled injury awards since it is a rare person indeed who does not have some previous physical impairment as a result of some prior injury.

*Id.* at 483, 578 P.2d at 162 (emphasis added).

¶9        A claimant is not entitled to any presumption of disability where his prior injury was neither work-related nor within the schedule. *See Wyckoff v. Indus. Comm'n*, 169 Ariz. 430, 434, 819 P.2d 1016, 1020 (App. 1991) (stating that a work-related scheduled prior injury is irrebuttably presumed to be disabling, and a non work-related scheduled injury is rebuttably presumed to be disabling).

¶10       Moreover, following *Alsbrooks*, we discussed the standard for establishing a loss of earning capacity in *Lewis v. Industrial. Commission*, 126 Ariz. 266, 269-70, 614 P.2d 347, 350-51 (App. 1980). In *Lewis*, we held that petitioner's preexisting arthritis condition constituted an unscheduled, non work-related injury. *Lewis*, 126 Ariz. at 269, 614 P.2d at 350. However, we concluded that the petitioner failed to present "reasonable evidence" showing that his arthritic condition had resulted in a loss of earning capacity, where (1) claimant merely established, through his own testimony and the testimony of his physician, that his arthritic condition resulted in an occupational change from "heavy work" to

"lighter work," and (2) "the record was devoid of evidence of wages either prior to or subsequent to the occupational change." *Id*. at 270, at 351. *Compare Borsh v. Indus. Comm'n*, 127 Ariz. 303, 307, 620 P.2d 218, 222 (1980) (stating that the ALJ should consider that the claimant was forced to quit two jobs and was denied another because of his impairment as evidence of loss of earning capacity).

¶11    Claimant argues that he met his burden of proving a pre-existing earning capacity disability by presenting medical evidence of his severe diabetic condition and testifying regarding his occupational history. The ALJ is the sole judge of witness credibility, and it is her duty to resolve all conflicts in the evidence and to draw all warranted inferences. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968). In this case, the ALJ's dispositive finding states in pertinent part:

> [T]he facts in Alsbrooks are distinguishable from the evidence in this case. Here, the applicant provided no evidence whatsoever of his earning capacity prior to the injury, either in the form of tax returns, business records, or testimony from a labor market consultant, or any combination of the above. The court in Alsbrooks found that permanent disability, as opposed to permanent impairment, is a legal question and not a medical one; therefore, testimony from medical witnesses cannot . . . carry the applicant's burden of proof on the issue of permanent disability, which involves a determination of loss of earning capacity. The record is silent on the applicant's earning capacity prior to this injury, and the applicant has therefore failed to meet his burden of proof to establish that he is entitled to a determination of unscheduled benefits.

¶12    Here, claimant was required to prove, by reasonable evidence, that his preexisting diabetic condition had caused him to suffer a loss of earning capacity disability[2] at the time he sustained the 2009

---

[2]    In *Borsh v. Industrial Commission*, 127 Ariz. 303, 620 P.2d 218 (1980), the Arizona Supreme Court reiterated that earning capacity disability "refers to injuries which result in impairment of earning power generally," and does not mean disablement to perform the particular work petitioner was doing at the time of his injury. *Id.* at 307, 620 P.2d at 222, *citing Savich v. Indus. Comm'n*, 39 Ariz. 266, 270, 5 P.2d 779, 780 (1931).

work injury to his toe. The determination of permanent impairment is a medical question and requires medical testimony, while the determination of permanent disability is a legal question. *Alsbrooks*, 118 Ariz. at 482, 578 P.2d at 161, *citing Smith v. Indus. Comm'n*, 113 Ariz. 304, 305-06 n.1, 552 P.2d 1198, 1199-1200 n.1 (1976).

¶13 We have approved the admission of testimony from labor market experts who receive medical information from treating physicians regarding a claimant's physical capabilities and limitations and match them to the requirements of specific jobs in the open labor market. *See Tucson Steel Div. v. Indus. Comm'n*, 154 Ariz. 550, 556, 744 P.2d 462, 468 (App. 1987). However, we have rejected opinion testimony from physicians regarding the abilities of an injured worker to function in a specific job because physicians generally lack the necessary expertise in regard to the job requirements. *Davis v. Indus. Comm'n,* 16 Ariz. App. 535, 537-38, 494 P.2d 735, 737-38 (1972). Such opinions are only allowed where the physician has special knowledge of "the physical and mental requirements of a claimant's vocation." *Hobbs v. Indus. Comm'n*, 20 Ariz. App. 437, 439, 513 P.2d 975, 977 (1973).

¶14 The evidence in this case established that the claimant was diagnosed with diabetes in 1994 while living in Saudi Arabia and working in an administrative position. He moved to New York in 2005 and operated a wholesale business until May 2007, when the business was robbed. After the robbery, the claimant opened a convenience store which he operated until 2008. In 2008, the claimant began working at Tungland's group care home as a caregiver and driver. He worked full time and earned $8.00 per hour. He continued to work there until his 2009 industrial injury resulted in a below knee amputation.

¶15 The claimant's only prior diabetic complication resulted from a mosquito bite in 2007, which formed a diabetic ulcer on his left foot. He was treated from August through November 2007, in Syracuse, New York, and some of these medical records were placed in evidence. Our review of the medical records reveals that recommendations for functional limitations were made on August 23, 2007, and November 19, 2007, in conjunction with the treatment of the claimant's diabetic foot ulcer. These records respectively reported the claimant's prognosis as "Good" and "Fair." The claimant testified that these physicians gave him physical limitations for standing, bending, and carrying, and

recommended that he apply for Social Security Disability benefits.[3]  Both reports diagnosed diabetes and morbid obesity, but neither indicated that the functional limitations were intended to extend beyond the treatment of the "healing" foot ulcer.

**¶16**        Our review of the record confirms the ALJ's conclusion that it is devoid of financial records or labor market evidence that would demonstrate the claimant had an earning capacity disability on September 9, 2009.  The only testimony elicited concerning the effect of the claimant's diabetes on his earning capacity was given by the claimant and his examining physician, and no evidence of wages before the claimant's occupation change was offered.  As a result, claimant failed to meet his burden of showing a loss of earning capacity.  *Lewis*, 126 Ariz. at 269-70, 614 P.2d at 350-51.

## IV. Conclusion

**¶17**        For all of the foregoing reasons, we find that the claimant failed to meet his burden of proof to unschedule his 2009 injury.  We affirm the ALJ's award.

---

[3]        The record does not contain information with regard to whether the claimant applied for or received these benefits.

**S W A N N**, J., dissenting:

¶18	I respectfully dissent.

¶19	Our Supreme Court held in *Alsbrooks v. Indus. Comm'n*, 118 Ariz. 480, 578 P.2d 159 (1978), that a claimant must present "some evidence, no matter how slight" to demonstrate that a prior physical impairment is also a lack of earning capacity. The majority concludes that claimant had not presented sufficient evidence to *prove* his loss of earning capacity. As I read *Alsbrooks* and the procedural history of this case, the question properly before the ALJ was not whether claimant had proven his loss of earning capacity but whether he had presented sufficient evidence to meet the extremely minimal threshold showing that *Alsbrooks* requires.

¶20	In this case, claimant presented evidence of the severity of his diabetic condition and the medical impairments that resulted from a mosquito bite in 2007. He also presented evidence of his work history, which gives rise, at a minimum, to an inference that his earning capacity had decreased by virtue of his fragile medical state. And though it may not have been admissible to prove the *extent* of his loss of earning capacity, claimant presented medical testimony from an independent medical examination report that his obesity and diabetes "significantly limited his earning capacity." No Arizona authority holds that a medical expert is not qualified to opine as to the *fact* of a general loss of earning capacity in the case of a severely ill individual. At this stage of the proceedings, nothing more should have been required. The evidence could have been viewed as more or less compelling by different fact finders, but it was "some evidence, no matter how slight."

**¶21** The transcript of the proceedings makes clear that the purpose of the hearings, in the ALJ's mind, was not to quantify loss of earning capacity. Such an exercise would require expert testimony, and it makes sense that claimants should not generally be required to retain labor experts until a hearing is scheduled that will require such testimony. Because I view the evidence on the record as sufficient to meet the *Alsbrooks* showing, I would remand for further evidentiary proceedings.



Ruth A. Willingham · Clerk of the Court
FILED: mjt